RENDERED: DECEMBER 13, 2018
TO BE PUBLISHED

Supreme Court of Kentucky

2017-SC-000596-DG

LEE COMLEY            APPELLANT

ON REVIEW FROM COURT OF APPEALS
V.            CASE NO. 2016-CA-001305-MR
FAYETTE CIRCUIT COURT NO. 15-CI-03350

AUTO-OWNERS INSURANCE COMPANY            APPELLEE

**OPINION OF THE COURT BY CHIEF JUSTICE MINTON**

**REVERSING AND REMANDING**

Lee Comley has homeowner's insurance through Auto-Owners Insurance Company covering loss from damage to his dwelling, other structures, and personal property—as those terms are defined by the policy—subject to certain policy exclusions and restrictions. Auto-Owners denied Comley's claim for loss to his home and its contents caused by water that inundated the basement of his home from a public water main that broke at a railroad crossing near his home. Auto-Owners denied Comley's claim based upon the application of policy exclusions relating to water damage. Comley sued Auto-Owners. The trial court granted summary judgment in favor of Auto-

Owners, and the Court of Appeals affirmed the trial court's judgment. We accepted discretionary review to decide whether these policy exclusions negate coverage for Conley's claimed losses. We conclude that the policy exclusions do not apply to Comley's loss, so we reverse the Court of Appeals and remand this case to the trial court for proceedings consistent with this opinion.

## I. BACKGROUND.

The undisputed facts are simple. A water main line, owned and operated by a public utility company, running near a railroad crossing on a nearby street ruptured, causing the release of large amounts of pressurized water to flow above the ground. The water ran onto Comley's residential property, filling his basement with water six-feet deep.

Comley sought payment from Auto-Owners for the loss to his property caused by the water damage. Auto-Owners denied the claim, asserting that some or all the following policy exclusions from coverage apply:

> We do not cover loss to covered property caused directly or indirectly by any of the following, whether or not any other cause or event contributes concurrently or in any sequence to the loss:
>
> (3) Water damage meaning:
>
> > (a) regardless of the cause, flood, surface water, waves, tidal water, storm surge, or overflow of a body of water. We do not cover spray from any of these, whether or not driven by the wind;
> >
> > . . .
> >
> > (d) water below the surface of the ground. This includes water which exerts pressure on or flows, seeps or leaks

through any part of a building, sidewalk, driveway,
swimming pool or other structure.

Both parties filed motions for summary judgment in the trial court. The trial court granted summary judgment in favor of Auto-Owners, ruling that the damage-causing event was excluded by the policy. The Court of Appeals affirmed the trial court's ruling. We granted discretionary review to consider this issue.

## II. ANALYSIS.

Auto-Owners argues three ways that the highlighted exclusions apply to deny Comley's claim: 1) the damage suffered by Comley was caused by "flood" under Subsection (3)(a); 2) the damage suffered by Comley was caused by "surface water" under Subsection (3)(a); and 3) the damage suffered by Comley was caused by "water below the surface of the ground" under Subsection (3)(d). We find all these arguments unconvincing.[1]

To start, we read Subsection (3)(a) as excluding from coverage damage caused entirely by natural forces. In so concluding, we are convinced by the following guidance from a seminal treatise on insurance law:

> A policy may cover or exclude various natural water-related forces, such as tidal waves, rain, flood, surface water, and subsurface water. . . . Damage from natural water-related forces is distinct from "water damage." Generally, "water damage" means water damage from plumbing systems. *However, a policy may exclude "water damage" and define it as damage from natural water phenomena. Provisions excluding damage from natural water-*

---

[1] As a preliminary matter, the only issue before this Court is the application of the policy exclusions at issue. The parties have never focused argument upon, nor has the trial court decided, the issue of coverage under Coverage A - Dwelling, Coverage B - Other Structures, and Coverage C – Personal Property of the policy.

3

*related perils preclude recovery for damage from natural causes, not from man-made systems.* The policy's language may indicate whether an exclusion applies to water damage from natural water phenomena or man-made systems.[2]

The language of Comley's policy mirrors almost exactly the language discussed by Couch, which is interpreted to exclude from coverage *natural water phenomena.* What happened here—a public water main line bursting—is not a natural water phenomenon.

Auto-Owners argues that the phrase "regardless of the cause" preceding the enumeration of events comprising "water damage" negates the distinction between naturally occurring versus artificially made water disasters. But "regardless of the cause" does not change the fact that the event at issue must still constitute "flood, surface water, waves, tidal water, storm surge, or overflow of a body of water" before the modifier applies. If the event at issue cannot be characterized as one of these naturally occurring events, then the "regardless of the cause" modifier is ineffective. In other words, the "regardless of the cause" modifier does nothing to alter the definitions of the terms "flood, surface water, waves, tidal water, storm surge, or overflow of a body of water" and cannot be used, for example, to characterize something as a "storm surge" that is not a "storm surge."

Couch does recognize the inconsistency that can arise from defining *flood* when considering a distinction between naturally occurring and man-made

---

[2] Steven Plitt, et al., *Couch on Insurance,* 11 Couch on Ins. § 153:48 (3d ed. June 2018) (internal citations omitted).

causes.[3] Couch proffers a reconciliation: "[W]hen the inundation results from the overflow of a body of water, whether natural or artificial, the event is a flood. Conversely, if the inundation does not arise from the overflow of a body of water, as when a water main break the event is not a flood."[4] Even though the enumeration of events excluded from coverage is preceded by "regardless of the cause," the event must still be a "flood" for the exclusion to apply. Using Couch's definition of *flood*, what occurred in this case—the breaking of a water main line—would not be a *flood*, so, again, the effect of "regardless of the cause" is irrelevant.

This same line of thinking applies to preclude the application of the exclusion for damage caused by "surface water." Black's Law Dictionary defines *surface water* as: "Water lying on the surface of the earth but not forming part of a watercourse or lake. Surface water most commonly derives from rain, springs, or melting snow."[5] In other words, according to Couch, "when water gathers into a hole, flows into a sewer pipe, and from there enters and damages a building, the water does not constitute surface water. This water is not diffused, has formed a body of water, and followed a defined channel and, therefore, generally is not considered surface water."[6] As such, the water causing damage must constitute "surface water" before the "regardless of the

---

[3] *Id.* at § 153:54.

[4] *Id.* (citing *Ender v. National Fire Ins. Co. of Hartford*, 169 A.D.2d 420, 420–21 (N.Y. App. 1991)).

[5] Black's Law Dictionary, "Surface Water" (10th ed. 2014).

[6] Plitt, *supra* fn 6 at § 153:57.

5

cause" modifier is applied. Here, the water causing damage came from a "watercourse," i.e., a water main line, so the water causing damage here cannot constitute "surface water," making application of the "regardless of the cause" modifier irrelevant.

Finally, Comley did not suffer damage from "water below the surface of the ground" as that phrase is used in Subsection (3)(d). Comley suffered damage because of water that inundated his home from the surface of the ground. And Couch observes that the use of such language is just another way of saying "subsurface water." According to Couch, "[t]here generally is not a dispute over the definition of subsurface water. Subsurface water is water beneath the ground or subterranean water."[7] Again, the damage caused here was by water flowing through a pipe that broke, causing the water from the pipe to flow above the surface of the ground, not by "subsurface water."

Simply put, we cannot agree that the event causing damage in this case was contemplated by the policy's exclusions at issue here. So we reverse the Court of Appeals and remand this case to the trial court for further proceedings consistent with this opinion.

### III.    CONCLUSION.

Because we conclude that none of the Auto-Owners policy exclusions apply under these facts to negate potential coverage, summary judgment was granted improperly by the trial court. Accordingly, we reverse the decision of

---

[7] *Id.* at § 153:58.

6

the Court of Appeals and remand this case to the trial court for further proceedings consistent with this opinion.

All sitting. Minton, C.J., Hughes, VanMeter, Venters, and Wright, JJ., concur. Cunningham, J., dissents by separate opinion in which Keller, J., joins.

CUNNINGHAM, J., DISSENTING: I respectfully dissent.

The issue in this case turns on the definition of the term "flood" under the insurance policy's exclusions section. We review the interpretation of insurance contracts de novo. *Cincinnati Ins. Co. v. Motorists Mut. Ins. Co.*, 306 S.W.3d 69, 73 (Ky. 2010). Under the reasonable expectations doctrine, an ambiguous insurance contract term will be construed in favor of the insured. If no ambiguity exists, then the terms of the contract will be enforced. *Kentucky Ass'n of Cntys. All Lines Fund Trust v. McClendon*, 157 S.W.3d 626, 630 (Ky. 2005).

Under the insurance policy at issue, coverage excluded "water damage" caused by a "flood," "regardless of the cause" of said flood. The term "flood" is not defined within the policy. Where a term does not have a technical meaning within the law and is not defined within an insurance policy, it is defined by its ordinary meaning. *Cincinnati*, 306 S.W.3d at 74 (internal citation omitted).

Black's Law Dictionary defines a "flood" as "[a]n inundation of water over land not usually covered by it. Water which inundates area of surface of earth where it ordinarily would not be expected to be." *Flood*, BLACK'S LAW DICTIONARY 640 (6th ed. 1990). This plain meaning definition does not specify whether the

7

inundating water must be from a natural source. Similarly, the Merriam-Webster Dictionary defines the noun "flood" to include "a rising and overflowing of a body of water especially onto normally dry land; a condition of overflowing . . . an overwhelming quantity or volume." *Flood*, MERRIAM-WEBSTER DICTIONARY (November 7, 2018), https://www.merriam-webster.com/dictionary/flood.

In contrast, Comley argues that "flood" is an ambiguous term that should be interpreted against the drafter to only exclude coverage for natural floods. However, the term is modified by the phrase "regardless of the cause," which entails that the "cause" does not have to be natural. As such, the meaning of "flood" in this clause of the contract includes natural and artificial occurrences. Therefore, the unambiguous language of the policy must be enforced as written, excluding coverage for floods from natural or artificial occurrences.

Here, the "flood" was caused by an artificial occurrence: leaking water from a ruptured water line. The water damage to Comley's property, caused by a flood of water from an outside source, like the ruptured water line, is excluded from coverage. Thus, policy coverage does not apply to the property damage which Comley suffered.

Further, although the policy does expressly insure against personal property damage caused by the "[a]ccidental discharge or overflow of water or steam from within a plumbing, heating, air conditioning or automatic fire protection sprinkler system or domestic appliance," Homeowners Policy Form 3

8

at 8, it implies that coverage is for the internal, domestic plumbing system of Comley's residence. As further proof, the policy goes on to exclude coverage for personal property loss "caused by or resulting from water from *outside the plumbing system* that enters through sewers or drains" and overflows the house's sump pump or other subsurface water removal system.

Thus, the policy excludes personal property damage caused by the discharge of water from an external ruptured water main that is "outside the plumbing system."

For the foregoing reasons, I dissent from the majority opinion.

Keller, J., joins.

COUNSEL FOR APPELLANT:

Stephen M. O'Brien, III
Bruce Clark Batten, II
David Coomer
O'BRIEN BATTEN & KIRTLEY, PLLC

COUNSEL FOR APPELLEE:

Luke Alan Wingfield
John Carter
McBRAYER, McGINNIS, LESLIE & KIRKLAND PLLC