NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-5349-16T3

ADRIAN SOSA,

      Plaintiff-Appellant,

v.

MASSACHUSETTS BAY
INSURANCE COMPANY,

      Defendant-Respondent.

_____

**APPROVED FOR PUBLICATION**

**April 24, 2019**

**APPELLATE DIVISION**

Submitted December 19, 2018 – Decided  April 24, 2019

Before Judges Ostrer, Currier and Mayer.

On appeal from Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-0160-16.

Jeffrey A. Bronster, attorney for appellant.

Kennedys CMK LLP, attorneys for respondent (Matthew J. Lodge, of counsel and on the brief).

The opinion of the court was delivered by

OSTRER, J.A.D.

This insurance coverage dispute concerns the meaning of a homeowner's insurance policy's water damage exclusion.  Plaintiff, Adrian Sosa, appeals from summary judgment dismissing his breach-of-contract complaint against

his homeowner's insurer, defendant Massachusetts Bay Insurance Company. Plaintiff unsuccessfully sought coverage for real and personal property damages after a municipal water main broke under a public street and inundated his home. Upon cross-motions for summary judgment, the court dismissed the complaint, finding that the policy's plain language excluded his claim. As we find that the water damage exclusion does not clearly bar plaintiff's claim, we reverse the grant of summary judgment to Massachusetts Bay. However, we also affirm the order denying summary judgment to plaintiff, as plaintiff has not established that his personal damage claim satisfies a named peril, and the balance of plaintiff's damages are not clearly documented.

I.

The following facts are undisputed.[1] On September 30, 2015, a municipal water-main pipe broke under Knox Avenue in Cliffside Park. The pavement buckled on the side of the street opposite plaintiff's home and water gushed about a foot into the air. The water flowed from the street into plaintiff's driveway and then into the garage and basement apartment of his home. About a foot of water filled the downstairs floor. Plaintiff identified

---

[1] Plaintiff did not dispute Massachusetts Bay's statement of material facts and provided none of his own in support of his cross-motion.

invoices exceeding $75,000 for work to remediate the damage to his real and personal property.[2] Plaintiff was unaware whether any other homes were affected. After he submitted a claim to Massachusetts Bay, an adjuster inspected the property and concluded that the damage resulted from "surface and ground water intrusion." On that basis, the company disclaimed coverage.

The Massachusetts Bay policy provided "all risk" coverage for damage to the dwelling and other structures, and "named peril" coverage for damage to personal property. See Victory Peach Grp., Inc. v. Greater New York Mut. Ins. Co., 310 N.J. Super. 82, 87 (App. Div. 1998) (explaining that an "all risk" policy generally covers all damages unless specifically excluded, and a "named peril" policy only covers perils specifically identified). Both forms of coverage were subject to the policy's water damage exclusion. Thus, plaintiff's real property damages were covered unless subject to the exclusion. The personal property damages were covered only if they also satisfied a named peril. We consider the water damage exclusion first.

The underlying policy form excluded losses caused by "water damage." An endorsement, entitled "Water Back-Up and Sump Discharge or Overflow" ("Sump Endorsement"), replaced "water damage" with "water." It also

---

[2] In his deposition, plaintiff referred to four invoices for various repairs, but they are not included in the record on appeal.

modified the exclusion's reach. Consistent with its title, the endorsement expanded coverage to include damages caused by water from sewers, drains, sumps, sump pumps or related equipment, except if caused by flood. However, the endorsement also revised the water damage exclusion in other respects having nothing to do with the subject of its title. Notably, it explained that the exclusion "applie[d] regardless of whether" the water was "caused by an act of nature or [was] otherwise caused."

As revised by the endorsement – we note the endorsement's additions in bold and deletions in brackets – the policy states that water means:

> (1) Flood, surface water, waves, **including tidal wave and tsunami, tides,** tidal water, overflow of any body of water, or spray from any of these, **all** whether or not driven by wind, **including storm surge** ("Exclusion 1");
>
> (2) Water which:
> **a.** Backs up through sewers or drains; or [which]
> **b.** overflows **or is otherwise discharged** from a sump, **sump pump or related equipment;**
> **as a direct or indirect result of flood** ("Exclusion 2")**;**
>
> (3) Water below the surface of the ground, including water which exerts pressure on, or seeps, leaks **or flows** through a building, sidewalk, driveway, **patio** foundation, swimming pool or other structure ("Exclusion 3"); **or**
>
> **(4) Waterborne material carried or otherwise moved by any of the water referred to in D.1 through D.3 of this Exclusion** ("Exclusion 4")**.**

4                                                                                    A-5349-16T3

**This exclusion applies regardless of whether any of the above, in D.1 through D.4 is caused by an act of nature or is otherwise caused.**

**This exclusion applies to, but is not limited to, escape, overflow or discharge, for any reason, of waterborne material from a dam, levee, seawall or any other boundary or containment system.**

**However,** direct loss by fire, explosion or theft resulting from [water damage] **any of the above, in D.1 through D.4, is covered. All other provisions of this policy apply.**

[Policy, Section I Exclusions, ¶ 1(c), as amended by section D of Sump Endorsement.]

The policy does not define "surface water" as used in the exclusion, but the policy does elsewhere define "flood" in a "Notice Regarding Flood Damage Coverage" ("Flood Notice"). It states:

2. Flood means a general and temporary condition of partial or complete inundation of normally dry land area from:

i. The overflow of inland or tidal waters;
ii. The unusual and rapid accumulation or runoff of surface waters from any source;
iii. Mudslides (that is, mudflows) that are proximately caused by flooding and are akin to a river of liquid and flowing mud on the surfaces of normally dry land areas, including your premises, as when earth is carried by a current of water and deposited along the path of the current;

3. Flood also includes the collapse or subsidence of land along the shore of a lake or other body of water

as a result of erosion or undermining caused by waves or currents of water exceeding cyclical levels, which results in the partial or complete inundation of normally dry land area;

As noted, coverage for plaintiff's personal property damage claim depends upon showing the damage also satisfied a named peril. The only named peril arguably pertinent covers damages caused by:

Accidental discharge or overflow of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.

The peril does not include loss:

. . . .

c. On the "residence premises" caused by accidental discharge or overflow which occurs off the "residence premises."

In this peril, a plumbing system does not include a sump, sump pump or related equipment.

[Policy, Section I – Perils Insured Against, Coverage C – Personal Property.]

Following discovery, the parties cross-moved for summary judgment. They only disputed the meaning of the water damage exclusion.

In granting Massachusetts Bay's motion, and denying plaintiff's cross-motion, the trial judge found no ambiguity in the policy's language. In an oral

6

opinion, she concluded that Exclusion 1 precluded recovery; and suggested Exclusion 3 would also apply if the first did not.

Plaintiff appeals from the grant of summary judgment to Massachusetts Bay and the denial of summary judgment to him.

II.

This court reviews a grant of summary judgment de novo, employing the same standard as the trial court. Henry v. N.J. Dep't of Human Servs., 204 N.J. 320, 330 (2010). The interpretation of an insurance policy, like any contract, is a question of law, which we review de novo. Selective Ins. Co. of Am. v. Hudson E. Pain Mgmt. Osteopathic Med., 210 N.J. 597, 605 (2012).

In performing that interpretative task, we look first to the plain language, and if it is unambiguous, we will not strain to provide a better policy than the one obtained. Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 200 (2016). We are guided by general principles: "coverage provisions are to be read broadly, exclusions are to be read narrowly, potential ambiguities must be resolved in favor of the insured, and the policy is to be read in a manner that fulfills the insured's reasonable expectations." Selective Ins. Co., 210 N.J. at 605. The insurer bears the burden to establish that an exclusion applies. Flomerfelt v. Cardiello, 202 N.J. 432, 442 (2010).

In determining whether there is ambiguity, we consider whether an average policyholder could reasonably understand the scope of coverage, and whether better drafting could put the issue beyond debate. Templo Fuente De Vida, 224 N.J. at 200. We will not strain to find ambiguity based on "far-fetched" interpretations, but "if there is more than one possible interpretation of the language, courts apply the meaning that supports coverage rather than the one that limits it." Flomerfelt, 202 N.J. at 442.

III.

Massachusetts Bay contends that Exclusion 1 applies, because the water that caused the damage was "a flood or surface water." Also, Exclusion 3 applies, because below-ground water "exert[ed] pressure on, . . . seep[ed], leak[ed], or flow[ed] through a building, sidewalk . . . driveway . . . or other structure." Massachusetts Bay highlights the provision that the "[e]xclusion applies regardless of whether any of the above . . . is caused by an act of nature or is otherwise caused." We are unconvinced.

Before turning to the specific exclusions we note that the policy does not exclude all losses resulting from "water," that is, the colorless liquid formed by atoms of hydrogen and oxygen. Had the insurer intended so broad an exclusion, it could have said so. See Hatley v. Truck Ins. Exch., 495 P.2d 1196, 1198 (Ore. 1972) (rejecting insurer's argument that "since all water must

be either on the surface or below the surface of the ground the water exclusions should be interpreted so broadly as to exclude all damage by water," noting if the insurer intended to exclude all water damage "it would have said so").  Thus, unless the kind of water that caused damage to plaintiff's home satisfies one of the identified forms of water, the exclusion does not apply.

## A.

We first consider Exclusion 1 and the meaning of "flood" and "surface water."

### 1.  Flood

Massachusetts Bay invokes plaintiff's own use of the word "flood."  In his deposition, Sosa said that "there was a flood and there was damage to my home."  However, in the Flood Notice, which Massachusetts Bay invoked to define "flood," flood does not mean any inundation of water, such as the inundation of the floor of a house, which is how plaintiff used the term. Rather, a flood is "a general and temporary condition of partial or complete inundation of normally dry land areas."  Even if one assumed that plaintiff's driveway, a "normally dry land area," was partially or completely inundated, and that inundation caused damage to the home, the condition was not a "general" one.  We assume the word "general" is not surplusage.  See Washington Constr. Co. v. Spinella, 8 N.J. 212, 217 (1951) (stating that "all

parts of the writing and every word of it will, if possible, be given effect" by a court) (quoting 9 Williston on Contracts § 46, at 64 (rev. ed. 1936)). Use of the word "general" conveys that the water-related condition was "not limited in scope, area, or application." Webster's II New College Dictionary 474 (3d ed. 2005). In other words, it must affect a wide area. The term precludes the isolated water condition that specifically damaged plaintiff's property.

This definition is consistent with the view of other jurisdictions that a "flood" connotes a great inundation or deluge affecting a broad area, and not the kind of localized water damage that a water-main break causes. See In re Katrina Canal Breaches Litigation, 495 F.3d 191, 216-18 (5th Cir. 2007) (applying a flood exclusion to damages caused by the release of water from the collapse of levees after Hurricane Katrina, and distinguishing water damage from water-main breaks, stating that "[a] broken water main . . . would generally be expected to produce more localized water damage and lacks the same potential to inundate large swaths of land than a breached levee or a failed dam would have"); Popkin v. Sec. Mut. Ins. Co. of New York, 367 N.Y.S.2d 492, 495 (App. Div. 1975) (rejecting application of flood exclusion to damage from water-main break, stating "[g]iven its ordinary meaning, the term 'flood' in the context of the insurance agreement does not encompass

10                                                      A-5349-16T3

water damage sustained as the result of a broken water main. It connotes an inundation; a deluge.").

This line of thought is clearly connected to the position that a "flood" is commonly understood to involve the overflow of a body of water[3] – whether natural or not – and a water main is not a body of water.[4] That is the view of the court in In re Katrina Canal Breaches Litigation, 495 F.3d at 216-17 (applying concept that flood waters generally come from the overflow of a body of water, "where a water-main break is involved, it is less clear that the flow of water is within the generally prevailing meaning of 'flood'") (citing J.J. Appleman, Insurance Law and Practice § 3145 (1970) and Steven Plitt et al., 11 Couch on Insurance § 153:54 (3d ed. 2006)); Kane v. Royal Ins. Co. of Am., 768 P.2d 678 (Colo. 1989) (applying flood exclusion to damage from a dam failure, noting that the flood exclusion did not unambiguously apply to a water-main break, because, among other reasons, a "water main is not so clearly a body of water"); and Wallis v. Country Mut. Ins. Co., 723 N.E.2d

---

[3] See, e.g., Webster's New Collegiate Dictionary 474 (9th ed. 1990) (defining flood as "a rising and overflowing of a body of water onto normally dry land").

[4] Some cases rely on the notion that a flood is a natural phenomenon and a water-main break is not. See, e.g., Robert Dorsen, Inc. v. Aetna Casualty & Surety Co., 562 F. Supp. 495, 497 (D.D.C. 1983); Novick v. United Servs. Auto Ass'n, 639 N.Y.S.2d 469, 470-71 (App. Div. 1996). We need not rely on that distinction.

376, 383 (Ill. App. Ct. 2000) (reasoning that "flood" may be ambiguous when applied to the "rupture of a man-made water main," but was not when applied to a well-established man-made creek); <u>Popkin</u>, 367 N.Y.S.2d at 495-96 (holding that a water-main break was not covered by a flood exclusion because, among other reasons, it did not involve a body of water that overflowed).

As <u>Couch</u> succinctly states:

> [D]istinguishing events based on whether the inundation had a natural or artificial cause may be unhelpful, especially if the policy itself does not make such a distinction.  Instead, the key to reconciling these cases [which find that a flood exclusion applies to a dam overflow but not a water-main break] lies in the common definition of a flood as an overflow from a body of water.  Thus, when the inundation results from the overflow of a body of water, whether natural or artificial, the event is a flood.  Conversely, if the inundation does not arise from the overflow of a body of water, as when a water main breaks, the event is not a flood.
>
> [Plitt et al., at § 153:54.]

Thus, even if the Flood Notice does not define "flood" as used in the water exclusion, "flood" does not clearly encompass the water released from the broken water main in this case.

A-5349-16T3

## 2. Surface Water.

"Surface water" is the second form of water addressed in Exclusion 1. It is also used as one of several causes of a flood, as defined in the Flood Notice.[5] However, the policy does not define "surface water."

The parties renew arguments they made before the trial court. Plaintiff, relying on a dictionary definition, contends that "surface water" is natural water that has not penetrated much below the surface of the ground. Massachusetts Bay contends essentially, that any water found on the surface of land, regardless of its source or its properties, is "surface water"; and, citing the Sump Endorsement, such "surface water" need not occur naturally, but may result from human behavior. Particularly absent a definition in the policy, we reject the insurer's broad interpretation of the term.

"Surface water" has been defined to possess a permanent nature, akin to a body of water. See N.J.A.C. 7:7-16.4 (defining "surface water" as "water in lakes, ponds, streams, rivers, bogs, wetlands, bays, and ocean that is visible on land"); N.J.A.C. 7:9B-1.4 (defining "surface waters" as "water at or above the

_____

[5] The Flood Notice states that as described in the previous section, the inundation must result from one of three identified sources: inland or tidal water overflow; surface water accumulation or runoff from any source; or mudslides. Only the second source conceivably applies here. The other definition of "flood" – the collapse of shores near lakes and other water bodies – does not apply.

land's surface which is neither groundwater nor contained within the unsaturated zone, including, but not limited to, the ocean and its tributaries, all springs, streams, rivers, lakes, ponds, wetlands, and artificial waterbodies"). Alternatively,

> Surface waters are those which fall on the land from the skies or arise in springs, and, following no defined course or channel, are lost by being diffused over the ground through percolation, evaporation, or natural drainage. They embrace waters derived from falling rain and melting snow, whether on the ground or on the roofs of buildings thereon.
>
> [Nathanson v. Wagner, 118 N.J. Eq. 390, 393 (Ch. 1935).]

Given these two competing but plausible meanings of the term, we conclude "surface water" is ambiguous. The ambiguity must be resolved against the insurer. Applying the definitions that convey a sense of permanence to the water body, the water-main break's water does not qualify as "surface water."

However, even if we were to import the definition from Nathanson, we do not think that the water that damaged plaintiff's property would satisfy the test. According to the definition, "surface water" comes from rain, snow or other precipitation, or underground springs – not water from a broken water main. Applying a similar definition of "surface water," the court in Colorado Court of Appeals found for the insured when an insurer invoked a surface

water exclusion to deny coverage for damages from the broken water main in that case. <u>Ferndale Dev. Co. v. Great Am. Ins. Co.</u>, 527 P.2d 939, 940 (Colo. App. 1974). The court concluded that the exclusion did not unambiguously extend to "water escaping from burst water mains." <u>Ibid.</u> Therefore, the policy covered the damage. We reach the same conclusion here.

### 3. Otherwise Caused

Massachusetts Bay argues that any ambiguity in the meaning of "flood" or "surface water" is resolved by the Sump Endorsement's provision that the water exclusion "applies regardless of whether any of the above, in [Exclusions 1 through 4] is caused by an act of nature or is otherwise caused" ("Proviso"). We are unpersuaded.

As a threshold matter, we question whether the insurer may invoke a general amendment to the water damage exclusion that is buried in an endorsement that, by its title, leads the reader to believe it pertains only to "Water Back-up and Sump Discharge or Overflow," and which in fact primarily pertains to that subject. Insurers are not free to subject policyholders to "hidden pitfalls" that violate the insured's reasonable expectations. <u>See Kievit v. Loyal Protective Life Ins. Co.</u>, 34 N.J. 475, 482 (1961).

Our Supreme Court has recognized that, since the average insured does not usually review policy language, the court is obliged to prevent overreaching:

> [C]onsent can be inferred only to the extent that the policy language conforms to public expectations and commercially reasonable standards. . . . In instances in which the insurance contract is inconsistent with public expectations and commercially accepted standards, judicial regulation of insurance contracts is essential in order to prevent overreaching and injustice.
>
> [Sparks v. St. Paul Ins. Co., 100 N.J. 325, 338 (1985).]

It defies the rule that exclusionary clauses must be "conspicuous, plain and clear," see Gerhardt v. Continental Ins. Cos., 48 N.J. 291, 298 (1966), if the conspicuous, plain and clear title of the exclusionary endorsement misleads.

We have declined to apply hidden policy language that departs from reasonable expectations created by a declarations page. Lehrhoff v. Aetna Cas. & Sur. Co., 271 N.J. Super. 340, 347 (App. Div. 1994) (noting the inability of "the average policyholder [to] successfully chart his own way through the shoals and reefs of exclusions, exceptions to exclusions, conditions and limitations, and all the rest of the qualifying fine print, whether or not in so-called plain language"). Likewise, an insurer should not be free to limit coverage provided by the underlying policy form, through an endorsement that suggests, by its

A-5349-16T3

prominent title, that it pertains to something else.  An endorsement with no title at all would have been less problematic than the one employed here.

Even assuming that the Proviso is enforceable in cases not involving sump pumps and water back-ups, it does not alter our conclusion that the water that entered and damaged plaintiff's property was neither "flood" water nor "surface water."  As for the former, as we discussed above, the principal defining characteristic of a flood is not that it is a natural phenomenon – it may arise from human actions – but that it involves the overflow of a body of water.  And, even if "surface water" may be caused by other than "an act of nature," water from a water-main break is not, unambiguously, surface water.

The New York Appellate Division rejected an insurer's argument, like Massachusetts Bay's here, that damage from a water-main break was surface water damage because the exclusion applied "whether the water damage [was] caused by or result[ed] from human or animal forces or any act of nature." Smith v. Safeco Ins. Co. of Am., 72 N.Y.S.3d 716, 718 (App. Div. 2018).  The court reasoned, "That statement follows the entire list of events for which the water damage exclusion applied, which included both acts of nature and

A-5349-16T3

human forces, and does not change the definition of 'surface water' as that term has been defined by this Court."[6]

Therefore, we conclude that Exclusion 1 does not bar plaintiff's claim for coverage.

B.

We also reject Massachusetts Bay's argument that Exclusion 3 prevents plaintiff's recovery. The exclusion precludes claims for damages from "water below the surface of the ground, including water which exerts pressure on, or seeps, leaks or flows through a building, sidewalk, driveway, patio, foundation, swimming pool or other structure." Simply put, the water that damaged plaintiff's home was no longer "below the surface of the ground" when it reached his property; it was above ground. By its plain meaning, the provision does not address damage caused by above-ground water.

The Supreme Court of Kentucky reached the same conclusion. In Comley v. Auto-Owners Insurance Co., 563 S.W.3d 9, 12 (Ky. 2018), a water-main break on a nearby street unleashed water that flowed above ground onto

---

[6] We recognize that the Sump Endorsement's language differs. It addresses whether "any of the above, in D.1. through D.4. [Exclusions 1 to 4] is caused by an act of nature or is otherwise caused." Arguably, that language refers to the forms of water defined by the four paragraphs, as opposed to the damage they cause. But our analysis is the same.

the plaintiff's property and damaged his dwelling. The Court held that the insured "did not suffer damage from 'water below the surface of the ground' as that phrase is used in [the exclusion]. Comley suffered damage because of water that inundated his home from the surface of the ground." Ibid.; see also Hudson v. Allstate Ins. Co., 809 N.Y.S.2d 124, 125 (App. Div. 2006) (declining to apply exclusion where failed pipe was "not below the surface of the ground"); Plitt et al., § 153:58 (stating there is general agreement that "[s]ubsurface water is water beneath the ground or subterranean water").

Nor did the water "exert pressure on, or seep[], leak[], or flow[] through" any of the structures. Notably, the language refers to water that presses against, or passes through the structure or appurtenance, not on top of it. The evident purpose is to exclude damage caused by below-ground water while it is below ground, but also as it rises to the ground, during which it may erode, crack or otherwise damage a foundation or other structure or appurtenance by exerting pressure on it, or by seeping, leaking, or flowing through it. See, e.g., Wurst v. State Farm Fire & Cas. Co., 431 F.Supp.2d 501, 506 (D.N.J. 2006) (applying New Jersey law, finding that the "water below the surface of the ground" exclusion barred a claim for thawing in the ground which contributed to a foundation wall collapse); Hall v. Am. Indem. Grp., 648 So. 2d 556, 558 (Ala. 1994) (applying exclusion to bar "coverage for damage that is caused by

19                                                                                          A-5349-16T3

water below the surface of the ground that exerts pressure on the foundation of the insured structure"); <u>Jahier v. Liberty Mut. Grp.</u>, 883 N.Y.S.2d 283, 286 (App. Div. 2009) (applying exclusion to bar loss "attributable to the subsurface water pressure that was exerted upon the empty swimming pool" causing it to rise up out of the earth).

Furthermore, water below the surface of a public street adjoining the insured property is neither mentioned, nor implied by Exclusion 3. The list of structures and appurtenances – "building, sidewalk, driveway, patio, foundation, swimming pool or other structure" – all plainly appear to be part of the "insured location," which includes "[t]he one family dwelling, other structures, and grounds; or [t]hat part of any other building" where the named insured resides. The apparent purpose of Exclusion 3's list is to include structures and appurtenances that the property owner would have interest in insuring against water-caused damage, and which the insurer wants to exclude from coverage.[7] Given that purpose, water below the surface of the public

---

[7] "Sidewalk" apparently includes the public sidewalk adjacent to the insured location, as well as private walkways on an insured property. But, that does not imply that a public street is included. Many municipalities require homeowners to keep sidewalks in good repair. See <u>Yanhko v. Fane</u>, 70 N.J. 528, 536 (1976). Thus, a homeowner has an insurable interest in the sidewalk that he does not have with respect to the public street.

A-5349-16T3

street is not implied.[8]

In sum, we conclude that Exclusions 1 and 3 do not bar plaintiff's claim under his policy. Therefore, we reverse summary judgment in favor of Massachusetts Bay.

IV.

We also affirm the trial court's denial of plaintiff's cross-motion for summary judgment. We do so for two reasons.

First, plaintiff must establish that his personal property damage claim satisfies one of the named perils in his policy. As we noted above, the only named peril that would appear to apply would be the coverage for personal property damage caused by the "accidental discharge or overflow of water . . . ." However, the provision does not extend coverage if the discharge occurred off the "residence premises," and the discharge from the water-main break occurred on the street and off the residence premises. Inasmuch as neither party addressed this provision, we decline to hold that plaintiff's

---

[8] Some cases also rely on the natural/artificial distinction. See, e.g., Robert Dorsen, Inc., 562 F. Supp. at 496 (interpreting the exclusion to apply to "water which is below the surface of the ground as a result of natural causes, and not water which happens to be found below the surface as a result of artificial devices such as pipes") (quoting Cantanucci v. Reliance Ins. Co., 349 N.Y.S.2d 187, 190 (App. Div. 1973)). We need not rely on that distinction, notwithstanding our reservations about the enforceability of the Proviso.

personal property damage claim must be denied on this basis, and instead leave it to the parties to fully address the matter before the trial court.

Secondly, with regard to plaintiff's claim for damage to the dwelling and other structures, he has failed to provide the court with competent evidence quantifying his damages. He provided no statement of material facts in support of his cross-motion, and Massachusetts Bay's statement was silent on the subject of the quantification of damages.

Reversed in part, affirmed in part, and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5349-16T3