**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1614-19

OLVIN LEONEL RODRIGUEZ-
ORTIZ,

     Plaintiff,

v.

INTERSTATE RACKING &
SHELVING, II, INC., LIT/GREEK
RT. 130, LLC, MEDICA, and
TITAN RACK & SHELVING,
LLC,

     Defendants,

and

INTERSTATE RACKING &
SHELVING, II, INC.,

     Plaintiff-Appellant,

v.

BERKSHIRE HATHAWAY,
INC., GUARD INSURANCE
COMPANY, a/k/a AMGUARD
INSURANCE COMPANY,
and BERKSHIRE HATHAWAY

GUARD, a/k/a BERKSHIRE
HATHAWAY GUARD
INSURANCE COMPANY,

     Defendants-Respondents.

_____

Argued January 27, 2021 – Decided September 3, 2021

Before Judges Ostrer, Accurso, and Enright.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Docket Nos. L-1477-15 and L-1563-18.

H. Alton Neff argued the cause for appellant.

Robert M. Wolf argued the cause for respondent AmGuard Insurance Company (Finazzo Cossolini O'Leary Meola & Hager, LLC, attorneys; Jeremiah O'Leary and Robert M. Wolf, on the brief).

PER CURIAM

Interstate Racking & Shelving, II, Inc. (Interstate) contends that its workers' compensation and employer's liability insurer, AmGuard Insurance Company (AmGuard), should have provided it a defense to a tort suit brought by an Interstate employee who was injured on the job. The employee was already receiving workers' compensation benefits. His lawsuit sought additional damages based on common law claims that Interstate (and others) acted intentionally as well as negligently, recklessly and carelessly. Eventually,

2

Interstate sued AmGuard for a defense. While Interstate's claim was pending, the court dismissed the employee's underlying suit — which Interstate defended with its own attorney — because he could not prove an intentional wrong to surmount the Workers' Compensation Act's exclusivity provision, N.J.S.A. 34:15-8. Later, on cross-motions for summary judgment in the coverage action, the trial court dismissed Interstate's complaint seeking defense costs and denied Interstate's motion for a declaration of coverage. The court held that exclusions in the employer's liability part of Interstate's policy barred its claim.

On appeal, Interstate challenges the trial court's interpretation of the policy. Interstate also argues that, to the extent the policy does bar recovery, it is void because it limits the scope of statutorily mandated coverage. Interpreting the employer's liability policy anew, we conclude it excludes coverage for Interstate's defense costs. However, AmGuard concedes that the workers' compensation portion of its policy afforded coverage of defense costs of negligence-based claims. Therefore, we reverse in part and remand for a determination whether, and to what extent, Interstate may recover costs associated with defending the negligence-based claims.

A-1614-19

I.

The facts are largely undisputed. Interstate employee Olvin Rodriguez-Ortiz fell off a warehouse racking system that he was dismantling and suffered serious injuries. He was not wearing a harness or other safety equipment. At the time, AmGuard insured Interstate under a Workers' Compensation and Employer's Liability Policy. Rodriguez-Ortiz filed a petition for workers' compensation benefits, on which AmGuard has paid in excess of $1 million.

Almost a year after the accident, Rodriguez-Ortiz also sued Interstate in Superior Court, seeking compensatory and punitive damages arising out of the same injuries. Rodriguez-Ortiz also sued numerous mainly fictitiously-named business entities and individuals who were somehow connected to the accident or the property and equipment involved. The prolix complaint, as later amended, alleged: Interstate and others failed to warn Rodriguez-Ortiz, to provide him needed safety equipment, or to take other measures to assure his safety; they created or permitted a "known dangerous hazard . . . which presented an unreasonable risk of harm"; their "negligence, recklessness and carelessness" caused Rodriguez-Ortiz's fall; and they were "strictly liable in tort." Rodriguez-Ortiz also alleged that Interstate's conduct "was especially egregious, wanton

A-1614-19

and/or intentional and amounted to conduct of a character so reprehensible as to warrant the award of punitive damages."

Interstate's attorney forwarded the summons and complaint to Interstate's commercial general liability insurer, Essex Insurance Company (Essex), and demanded a defense and indemnification up to the policy's limit, if necessary. Separately, Interstate's owner sent a similar demand to Interstate's insurance producer, who evidently procured both the Essex and AmGuard policies. Shortly after Interstate filed its answer, Rodriguez-Ortiz's attorney delivered a copy of the complaint to AmGuard. Interstate's attorney also communicated with AmGuard about the suit. But the record includes no express written demand for a defense like the one sent to Essex.

Three years into the employee's pending tort action, Interstate sued AmGuard for its defense costs, an assumption of the defense, and a declaratory judgment of coverage under the employer's liability portion of its policy. Interstate contended it was entitled to a defense from AmGuard because Rodriguez-Ortiz alleged that Interstate acted intentionally. The "verified" complaint stated that Interstate demanded a defense "by notification through its

A-1614-19

insurance agent."[1] In addition to its breach of contract claim, Interstate asserted a breach of the covenant of good faith and fair dealing, a breach of the duty of care, fraud, wrongful denial of insurance coverage, and violation of the Consumer Fraud Act, N.J.S.A. 56:8-1 to -224. Interstate also sought attorney's fees and punitive damages.

In its answer, AmGuard asserted that its policy excluded coverage of Rodriguez-Ortiz's intentional tort claim because it excluded claims for intentional wrongs and actions that the insured knows are "substantially certain" to cause death or injury; and the policy excluded a duty to defend uncovered claims. Interstate's coverage action was consolidated with Rodriguez-Ortiz's tort suit.

After discovery in the tort suit, Interstate succeeded in having the complaint dismissed on summary judgment. The court, citing Millison v. E.I. du Pont de Nemours & Co., 101 N.J. 161 (1985) and Laidlow v. Hariton Machinery Co., 170 N.J. 602 (2002), held that Rodriguez-Ortiz could not satisfy

---

[1] We say "verified" in quotes because Interstate's president, Miguel Suarez Hernandez, certified only that the statements in the complaint were "true to the best of [his] knowledge and information," which is not a proper verification. See Jacobs v. Walt Disney World, Co., 309 N.J. Super. 443, 454 (App. Div. 1998) (stating that factual assertions based merely upon information and belief are inadequate under Rule 1:6-6).

the "intentional wrong" exception to the Workers' Compensation Act's exclusivity provision, N.J.S.A. 34:15-8.[2] The court concluded that Rodriguez-Ortiz failed to prove that Interstate knew its actions were substantially certain to cause Rodriguez-Ortiz's injury, and failed to prove that Rodriguez-Ortiz's injury was more than what may "commonly arise within an industrial life."

And, a few months later, on cross-motions for summary judgment in the coverage action, the court held that the AmGuard employer's liability policy excluded coverage for Interstate's defense costs. The court noted that the employer's liability policy excluded coverage for claims that the workers' compensation part of the policy covered. And the employer's liability policy also excluded coverage for intentional wrongs, including those that would satisfy the "substantially certain" test in Millison and Laidlow. Because the

---

[2]  The Court in Laidlow, 170 N.J. at 617, summarized the test this way:

> [U]nder Millison, in order for an employer's act to lose the cloak of immunity of N.J.S.A. 34:15-8, two conditions must be satisfied: (1) the employer must know that his actions are substantially certain to result in injury or death to the employee, and (2) the resulting injury and the circumstances of its infliction on the worker must be (a) more than a fact of life of industrial employment and (b) plainly beyond anything the Legislature intended the Workers' Compensation Act to immunize.

policy denied a duty to defend uncovered claims, Interstate was not entitled to its defense costs.

Interstate serves up a dozen points on appeal. Reduced to their essence, Interstate presents three main arguments: (1) AmGuard was required to defend because Rodriguez-Ortiz grounded claims in negligence, and the AmGuard employer's liability policy did not exclude negligence claims; (2) the exclusion of intentional wrongs, including actions substantially certain to cause injury, was void because it limited coverage Interstate was compelled to obtain; and (3) AmGuard was estopped from denying coverage.

II.

As the record discloses no genuine issue of material fact, Interstate's appeal turns on purely legal issues that we review de novo: does the AmGuard policy exclude coverage; does the compulsory insurance law override its terms; and was AmGuard estopped from denying coverage. See Abboud v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 450 N.J. Super. 400, 406 (App. Div. 2017) (stating that interpreting an insurance policy is a legal question that we review de novo); Pickett ex rel. Est. of Pickett v. Moore's Lounge, 464 N.J. Super. 549, 555 (App. Div. 2020) (stating that resolution of insurance policy interpretation

8

issue will determine whether insurer was entitled to summary judgment where "the record discloses no genuine issue of material fact").

A.

Turning first to the AmGuard policy, we are "guided by general principles: 'coverage provisions are to be read broadly, exclusions are to be read narrowly, potential ambiguities must be resolved in favor of the insured, and the policy is to be read in a manner that fulfills the insured's reasonable expectations.'" Sosa v. Mass. Bay Ins. Co., 458 N.J. Super. 639, 646 (App. Div. 2019) (quoting Selective Ins. Co. of Am. v. Hudson E. Pain Mgmt. Osteopathic Med., 210 N.J. 597, 605 (2012)). We apply the policy language's "plain, ordinary meaning." Zacarias v. Allstate Ins. Co., 168 N.J. 590, 595 (2001). We liberally construe the policy in the insured's favor "to the end that coverage is afforded 'to the full extent that any fair interpretation will allow.'" Progressive Cas. Ins. Co. v. Hurley, 166 N.J. 260, 273 (2001) (quoting Kievit v. Loyal Protective Life Ins. Co., 34 N.J. 475, 482 (1961)). "In determining whether there is ambiguity, we consider whether an average policyholder could reasonably understand the scope of coverage, and whether better drafting could put the issue beyond debate." Sosa, 458 N.J. Super. at 646.

A-1614-19

We must examine the scope of the policy's coverage because "the duty to defend comes into being when the complaint states a claim constituting a risk insured against." Danek v. Hommer, 28 N.J. Super. 68, 77 (App. Div. 1953), aff'd o.b., 15 N.J. 573 (1954). The duty exists even if "the cause of action . . . cannot be maintained against the insured either in law or in fact — in other words, because the cause is groundless, false or fraudulent." Ibid.; see also Abouzaid v. Mansard Gardens Assocs., 207 N.J. 67, 79 (2011). "The complaint should be laid alongside the policy and a determination made as to whether, if the allegations are sustained, the insurer will be required to pay the resulting judgment" with doubts resolved in the insured's favor. Abouzaid, 207 N.J. at 79-80 (quoting Danek, 28 N.J. Super. at 77).

In Danek, an injured employee's husband brought a per quod action against his wife's employer. Whether the Workers' Compensation Act excluded the claim was an open issue until the Supreme Court declared it was excluded in that very litigation. See Danek v. Hommer, 9 N.J. 56 (1952). In the subsequent suit over defense costs, the court held that the employer was entitled to recover because, when the husband filed his suit, Hommer had a plausible claim for coverage. Danek, 28 N.J. Super. at 80. The court held that the insurer could not "escape defending such an action because, as the Supreme Court later

decided, there was no legal liability on the part of the employer to pay the claim." Id. at 78.

To perform the exercise of laying Rodriguez-Ortiz's complaint alongside the policy, we must be mindful that the AmGuard policy actually combines two policies of insurance: workers' compensation in part one, and employer's liability in part two. The workers' compensation insurance "applies to bodily injury by accident or . . . by disease." AmGuard promises to "pay promptly when due the benefits required . . . by the workers compensation law." AmGuard also assumes "the right and duty to defend" at its expense "any claim, proceeding or suit against [Interstate] for benefits payable by this insurance," and disavows any "duty to defend a claim, proceeding or suit that is not covered by [the workers' compensation] insurance."

Like part one, the employer's liability insurance also "applies to bodily injury by accident or . . . disease." AmGuard promises to "pay all sums that [Interstate] legally must pay as damages because of bodily injury to your employees, provided the bodily injury is covered" by the employer's liability insurance. The policy then identifies four forms of damages that this promise "include[s]": (1) damages owed third parties who suffered a loss as a result of the employee's injury; (2) costs of care and loss of services; (3) damages for

11

consequential bodily injury to identified family members of the injured employee; and (4) damages for bodily injury the employee claims against Interstate in a non-employer capacity.[3]

Two exclusions warrant our scrutiny to determine if Interstate was entitled to a defense under the employer's liability policy. Under the heading "C. Exclusions," the policy excludes the duty to pay: "4. Any obligation imposed by a workers compensation, occupational disease, unemployment compensation, or disability benefits law, or any similar law" and "5. Bodily injury intentionally caused or aggravated by you."[4] An endorsement amplifies the "intentional injury" exclusion, stating:

---

[3] We reject AmGuard's contention this is an exclusive list. Although "include" could mean "the thing which is stated is the only thing intended," it may also mean "the thing which is stated constitutes only one of the things intended," and the word "include" "[o]rdinarily . . . is a word of enlargement and not of limitation." See Cuna v. Bd. of Fire Comm'rs, 42 N.J. 292, 304 (1964). That is, "include" or "includes" "conveys the conclusion that there are other items includable, though not specifically enumerated." Zorba Contractors, Inc. v. Hous. Auth. of Newark, 282 N.J. Super. 430, 434 (App. Div. 1995). In any event, we would resolve any ambiguity on that score against the insurer. Sosa, 458 N.J. Super. at 651.

[4] The policy also excludes: "2. Punitive or exemplary damages because of bodily injury to an employee employed in violation of law" and "3. Bodily injury to an employee while employed in violation of law with your actual knowledge or the actual knowledge of any of your executive officers." We reject AmGuard's argument that because Rodriguez-Ortiz, an immigrant, lacked

---

With respect to Exclusion C5, this insurance does not cover any and all intentional wrongs within the exception allowed by N.J.S.A. 34:15-8 including but not limited to, bodily injury caused or aggravated by an intentional wrong committed by you or your employees, or bodily injury resulting from an act or omission by you or your employees, which is substantially certain to result in injury.

The duty to defend extends no farther than covered claims and suits. The policy states: "We have no duty to defend a claim, proceeding or suit that is not covered by this insurance. We have no duty to defend or continue defending after we have paid our applicable limit of liability under this insurance."

B.

We conclude that even if Rodriguez-Ortiz succeeded in his various claims of Interstate's negligence — whether denominated careless, reckless, or violations of duty of care — Interstate would not be entitled to indemnification under the employer's liability portion of its policy. That is so because Rodriguez-Ortiz's remedy for such claims rests exclusively within the workers' compensation system.

---

authorization to work, AmGuard could avoid liability on the "violation of law" ground. See Fernandez-Lopez v. Jose Cervino, Inc., 288 N.J. Super. 14, 21 (App. Div. 1996) (stating that "[u]nless and until the Legislature expressly excludes undocumented aliens from workers' compensation benefits, the compassionate public policy which animates this social legislation favors inclusion of all injured workers not specifically excluded by the Legislature").

A-1614-19

It is undisputed that Rodriguez-Ortiz did not opt out of workers' compensation.  See N.J.S.A. 34:15-9; Peck v. Newark Morning Ledger Co., 344 N.J. Super. 169, 176 (App. Div. 2001) ("There is a presumption that employers and employees accept the provisions of Article II of the [Workers' Compensation] Act . . . unless there is an express written election not to be bound by the article.").  In return for the certainty of compensation within the Workers' Compensation system for workplace injury "without regard to the negligence of the employer," N.J.S.A. 34:15-7, the Act provides that an injured employee may not sue his or her employer when the employer's negligence is responsible for the injury, see N.J.S.A. 34:15-8 (stating "[s]uch agreement shall be a surrender . . . of . . . rights to any other method, form or amount of compensation or determination thereof than as provided in this article").  As we noted in Estate of D'Avila v. Hugo Neu Schnitzer East, 442 N.J. Super. 80, 99 (App. Div. 2015), "N.J.S.A. 34:15-8 directs that an employer may not be sued by an employee . . . for negligence that caused injury or death to the employee."  In short, "workers' compensation is the exclusive remedy, absent proof of an intentional wrong."  Ibid.

Thus, Rodriguez-Ortiz's negligence-based claims were, in the words of Exclusion C4, "obligation[s] imposed by a workers compensation . . . law."

14

Those claims — even if proved — fell outside the employer's liability coverage. And, because the employer's liability policy stated AmGuard had "no duty to defend a claim, proceeding or suit that is not covered by this insurance," the employer's liability policy imposed on AmGuard no "duty to defend" Rodriguez-Ortiz's negligence-based claims.

However, that does not end the matter of a defense of the negligence-based claims. AmGuard concedes that Interstate was entitled to a defense of those claims under the workers' compensation part of the policy. While its employer's liability policy "expressly excludes . . . claims compensable through workers' compensation" (e.g., the negligence claims in Rodriguez-Ortiz's complaint), AmGuard acknowledges that "[c]overage and a defense for such claims is afforded in Part One of the Policy concerning claims cognizable within the workers' compensation framework."

That is so because Rodriguez-Ortiz's negligence-based claims were for "bodily injury by accident," to which the workers' compensation insurance applied; and the policy imposed upon AmGuard a "duty to defend . . . any claim, proceeding or suit against [Interstate] for benefits payable by this [workers' compensation] insurance"; and its duty to defend only excluded "a claim, proceeding or suit that is not covered by this [workers' compensation]

insurance."  In other words, AmGuard does not dispute that if an employee brings a negligence-based claim in Superior Court — whether it is instead of, or in addition to, filing a petition in the Workers' Compensation Division — the workers' compensation policy covers the cost of defending and, presumably, securing the lawsuit's dismissal and transfer to the Workers' Compensation Division.  See N.J.S.A. 34:15-49(a) ("The Division of Workers' Compensation shall have the exclusive original jurisdiction of all claims for workers' compensation benefits . . . .").

The workers' compensation coverage creates a duty to provide a defense to the negligence-based claims, notwithstanding that the policy excluded a duty to defend intentional-tort claims.  "When multiple alternative causes of action are stated, the duty to defend will continue until every covered claim is eliminated."  Voorhees v. Preferred Mut. Ins. Co., 128 N.J. 165, 174 (1992).  However, an insurer is obligated "to pay only those defense costs reasonably associated with claims covered under the policy."  SL Indus., Inc. v. Am. Motorists Ins. Co., 128 N.J. 188, 215 (1992).

Therefore, we reverse in part and remand for the court to determine whether, and to what extent, Interstate may be entitled to reimbursement of its costs associated with defending Rodriguez-Ortiz's negligence-based claims.[5]

## C.

We turn next to the employer's liability policy's exclusion of intentional wrongs, including acts "substantially certain to result in injury." Interstate does not seriously contest that the policy's plain language would defeat its claim for the costs of defending Rodriguez-Ortiz's claims of intentional tort. Rather, Interstate contends that enforcing the provision violates public policy.

The employer's liability endorsement clearly intends to make the policy's exclusion co-extensive with bodily injury claims that satisfy the "intentional wrong" exception to the Workers' Compensation Act's exclusivity provision.[6]

---

[5] We leave it to the trial court to determine the viability of other defenses AmGuard may have to a claim for these costs, such as AmGuard's affirmative defense that Interstate breached its obligation under part four of the policy to provide AmGuard prompt notice of Rodriguez-Ortiz's lawsuit, and to not voluntarily assume expenses except at its own cost. We acknowledge that AmGuard adverted to this provision in its brief before us, but it did so only in a footnote. For that reason, we are not obliged to decide it. Almog v. Isr. Travel Advisory Serv., Inc., 298 N.J. Super. 145, 155 (App. Div. 1997).

[6] The policy provision is an apparent response to our decisions in New Jersey Manufacturers Insurance Co. v. Delta Plastics Corp., 380 N.J. Super. 532, 539 (App. Div. 2005), aff'd, 188 N.J. 582 (2006), and Charles Beseler Co. v.

The Court in <u>Millison</u> held that "the intentional wrongs of an employer . . . fall outside of the boundaries of the Compensation Act," although N.J.S.A. 34:15-8 expressly refers only to intentional wrongs of co-employees. <u>Millison</u>, 101 N.J. at 185. And to establish the requisite intentional wrong to surmount the exclusivity bar, a plaintiff must show two things: first, the employer knew its "actions [were] substantially certain to result in injury or death to the employee," and second, "the resulting injury and the circumstances of its infliction on the worker must be (a) more than a fact of life of industrial employment and (b) plainly beyond anything the Legislature intended the Workers' Compensation Act to immunize." <u>Laidlow</u>, 170 N.J. at 617.

With that as a backdrop, the policy endorsement excludes coverage of "any and all intentional wrongs within the exception allowed by N.J.S.A. 34:15-8." The endorsement specifies that the exclusion "includ[es] but [is] not limited to, bodily injury caused or aggravated by an intentional wrong committed by you or your employees or bodily injury resulting from an act or omission by you or your employees, which is substantially certain to result in injury."

---

<u>O'Gorman & Young, Inc.</u>, 380 N.J. Super. 193, 198 (App. Div. 2005), <u>aff'd,</u> 188 N.J. 542 (2006), that exclusions of claims "intentionally caused or aggravated by [the insured]" did not encompass all intentional wrongs that lie outside the exclusivity provision.

The exclusion clearly covers Rodriguez-Ortiz's intentional tort claims. And, "indulgently interpreted," see Green v. Morgan Props., 215 N.J. 431, 456 (2013), the complaint also encompassed claims that Interstate engaged in acts "substantially certain to result in injury." Although the complaint did not include the "substantially certain" magic words, it alleged that Interstate created or permitted "a known dangerous hazard . . . which presented an unreasonable risk of harm." In discovery, Rodriguez-Ortiz's counsel attempted (but failed) to elicit evidence to satisfy the "substantially certain" requirement.

Therefore, upon placing Rodriguez-Ortiz's complaint alongside the policy, we conclude that AmGuard had no duty to defend the complaint's intentional tort claims, because the employer's liability policy excludes from the duty to defend any claims that are not covered by the insurance.

Interstate contends that enforcing the exclusion violates public policy, because it restricts coverage that Interstate was mandated to obtain. But the compulsory insurance Interstate invokes assures employees' recoveries against their employers, not employers' recoveries against their insurers. Therefore, we are unconvinced that the employer's liability policy's duty-to-defend exclusion is void as against public policy.

19

Soon after the Workers' Compensation Act was in place, there were calls to implement "a system of compulsory insurance" to assure that workers received compensation if their employers became insolvent, and to assure that employers could manage the risk of payouts to employees. The commission that recommended adoption of New Jersey's workers' compensation system and then monitored its implementation concluded "the law was gravely defective in that the injured person or his dependents had no assurance of payment in the event of the insolvency of the employer." Report of the Employers' Liability Comm'n For the Year 1914 at 6 (1915). The commission stated:

> As this serious defect can only be remedied by a system of compulsory insurance, we now recommend the passage of a compulsory insurance act, for the protection of the employer from financial disaster and the assurance to those persons entitled to compensation, of the payments provided by law. In recommending this, we have in mind the fact that it is quite as necessary for the protection of the employer as for the employee, as otherwise he may be forced out of business and into bankruptcy owing to his failure to voluntarily cover his liability by insurance.
>
> [Ibid.]

The Legislature first passed a law requiring insurance to cover liability under the workers' compensation system, see L. 1917, c. 178, and then passed a law requiring that employers insure themselves against liability to employees

20

who are covered under section I of the Act, N.J.S.A. 34:15-1 to -6, see L. 1917, c. 262.[7] Our modern law continues to require employers to make "sufficient provision for the complete payment of any obligation which he [or she] may incur to an injured employee, or his [or her] dependents under the provisions of said article 2 [the workers' compensation system]." N.J.S.A. 34:15-71 (emphasis added).[8] They may do so by self-insuring if they have the financial capacity, N.J.S.A. 34:15-77, or by obtaining insurance, N.J.S.A. 34:15-78. Likewise, employers are required to "make sufficient provision for the complete payment of any obligation which [the employer] may incur to an injured employee or his [or her] administrators or next of kin under said article 1 of this chapter [N.J.S.A. 34:15-1 to -6, the tort system for those employees who opt out of workers' compensation]." N.J.S.A. 34:15-72 (emphasis added). Nothing requires employers to make "provision" for their defense costs.

---

[7] Section I has been called "the employers' liability section of the statute," which governs employees who opt out of the workers' compensation system, and which covers "liability [that] is made to depend not upon any implied contract for compensation, but upon the negligence of the employer, either at common law or resulting from the requirements of the act itself." Taylor v. Seabrook, 87 N.J.L. 407, 408 (Sup. Ct. 1915).

[8] Although current law collects workers' compensation system provisions under "article 2" and the non-elected common law system provisions under "article 1," the original workers' compensation statute placed them under "section 2" and "section 1" and old cases use that nomenclature. See L. 1911, c. 95, §§ 1, 2.

We recognize that the Supreme Court has broadly read these compulsory insurance provisions. In a case involving a claim for bodily injury arising out of acts of sexual harassment, the Court held that "N.J.S.A. 34:15-72 required [the employer] to obtain sufficient coverage for the payment of any obligation it might incur on account of bodily injuries to an employee." Schmidt v. Smith, 155 N.J. 44, 51 (1998) (emphasis added). The Court held that the defendant-employer — which obtained a combined workers' compensation and employer's liability policy — contracted with its insurer "for the coverage of bodily injuries falling both inside and outside of the workers' compensation structure." Ibid. In particular, "[t]he employers liability section of the contract was to provide compensation for bodily injuries to workers falling outside the workers' compensation system." Id. at 51-52. That included, the Court said, "injuries intentionally caused by fellow employees, for example." Id. at 52. In other words, the coverage included claims placed outside the exclusivity provision by N.J.S.A. 34:15-8.

The Court explained that the Legislature required employers to obtain insurance "to assure that this statutory remedy [of workers' compensation] given in lieu of a common law remedy is not illusory." Id. at 49. The employer's liability coverage "is intended to serve as a 'gap-filler' providing protection to

the employer in those situations where the employee has a right to bring a tort action despite provisions of the workers' compensation statute."  Id. at 49-50 (quoting Producers Dairy Delivery Co. v. Sentry Ins. Co., 718 P.2d 920, 927 (Cal. 1986)).

The Court also held that policies issued pursuant to the compulsory insurance requirements could not undermine that goal:  "In short, the terms of a policy issued pursuant to N.J.S.A. 34:15-78 cannot conflict with the statutory mandate that there be coverage provided for all occupational injuries."  Id. at 49 (emphasis added).

This broad view of the scope of mandated coverage may well override the AmGuard exclusion of claims for intentional wrongs or actions substantially certain to cause injury.  But, we need not decide that question in this case. Interstate does not seek indemnification for a liability or "obligation" it has incurred to its "injured employee," N.J.S.A. 34:15-71.   Interstate seeks indemnification for its own defense costs.  That lies outside the statutory mandate and the public policy that motivated it.  Therefore, there is no basis to set aside the policy's exclusion of costs to defend Rodriguez-Ortiz's intentional tort claims.

D.

We next dispatch Interstate's argument that because AmGuard did not respond to the civil suit, it should be estopped from denying coverage. The governing principles are well-established. "[W]here, after timely notice, adequate opportunity to investigate a claim, and the knowledge of a basis for denying or questioning insurance coverage, the insurance carrier fails for an unreasonable time to inform the insured of a potential disclaimer, it is estopped from later denying coverage under the insurance policy." Griggs v. Bertram, 88 N.J. 347, 363-64 (1982). And "[p]rejudice justifying an estoppel against the insurer will be presumed where 'there has been a long lapse of time without any indication by the insurance carrier of a loss or rejection of coverage, during which the insured justifiably expects to be protected by the carrier.'" Reliance Ins. Co. v. Armstrong World Indus., Inc., 292 N.J. Super. 365, 375-76 (App. Div. 1996) (quoting Griggs, 88 N.J. at 362).

However, AmGuard did not fail to respond to the suit "for an unreasonable time," Griggs, 88 N.J. at 363, "during which [Interstate] justifiably expect[ed] to be protected," id. at 362. First, the workers' compensation claim did not necessarily put AmGuard "on notice of the potential for a common law claim until the filing of the complaints." See N.J. Mfrs. Ins. Co. v. Joseph Oat Corp.,

24

287 N.J. Super. 190, 197-98 (App. Div. 1995), abrogated on other grounds by Beseler, 188 N.J. at 548 n.2. If Interstate expected to be protected by AmGuard, it would have demanded a defense from AmGuard instead of Essex; and it would not have filed an answer to Rodriguez-Ortiz's complaint even before AmGuard received the complaint (from Rodriguez-Ortiz's attorney). An insured is not entitled to recover expenses "prior to the insured's tendering the defense to the insurer." SL Indus., 128 N.J. at 200. While mere notice conceivably may imply a tender, the circumstances here imply the opposite: that Interstate was not seeking AmGuard's defense.

### E.

We briefly comment on Interstate's contention that denying it a defense would frustrate its reasonable expectations. Interstate relies on the statement of its co-owner, Miguel Suarez Hernandez, that his insurance producer told him that Interstate "would be protected" "if an employee was hurt on one of the jobs . . . [and] if the employee sued Interstate in the Workers Compensation Court or in . . . Superior Court." That is not enough to overcome plain policy language.

We reviewed the "reasonable expectations" doctrine in Abboud, where we explained that an insured's "reasonable expectations" will override the plain meaning of a policy only in "exceptional circumstances." 450 N.J. Super. at 408

(quoting Doto v. Russo, 140 N.J. 544, 556 (1995)).  "Courts may vindicate the insured's reasonable expectations over the policy's literal meaning 'if the text appears overly technical or contains hidden pitfalls, cannot be understood without employing subtle or legalistic distinctions, is obscured by fine print, or requires strenuous study to comprehend.'" Id. at 409 (quoting Zacarias, 168 N.J. at 601).  Also, the expectations must be "real" and "'objectively reasonable.'" Id. at 410 (quoting Templo Fuente de Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 224 N.J. 189, 210 (2016)).

Interstate has failed to demonstrate that AmGuard's policy is so obscure that Suarez Hernandez's alleged expectation should triumph over the policy's language.  Furthermore, his general statement that his agent told him Interstate "would be protected" falls short of establishing a real and reasonable expectation that defense costs would be covered, no matter what.  This is not a case where "the scope of coverage is so narrow that it 'would largely nullify the insurance' and defeat the purpose for which it was obtained." Id. at 410 (quoting Sparks v. St. Paul Ins. Co., 100 N.J. 325, 337-39 (1985)).

To the extent not addressed, plaintiff's remaining arguments lack sufficient merit to warrant written discussion.  R. 2:11-3(e)(1).

A-1614-19

Affirmed in part, reversed in part and remanded.  We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION